UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES DONALD JORGENSEN,<br><br>        Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.: C 11-0331 PSG<br><br>**ORDER DENYING PLAINTIFF CHARLES DONALD JORGENSEN'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT MICHAEL J. ASTRUE'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 17, 18)** |

Plaintiff Charles Donald Jorgensen ("Jorgensen") filed this action on June 7, 2011, appealing the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying childhood disability insurance benefits.[1] Jorgensen moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsel, the court DENIES Jorgensen's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

---

[1] The challenged decision was rendered by Administrative Law Judge Charles D. Reite (the "ALJ") on July 8, 2009. The ALJ's decision became final on December 22, 2010, when the Appeals Council of the Social Security Administration denied Jorgensen's request for administrative review of the decision.

1

Case No.: C 11-0331 PSG
ORDER

## I. BACKGROUND

The following facts are taken from the July 8, 2009 decision by the ALJ and the accompanying administrative record ("AR"). Jorgensen was born on October 24, 1967.[2] In 1985, he graduated from high school and enrolled at the University of California, Berkeley ("UC Berkeley").[3] Jorgensen lived in a dormitory during his freshman year.[4] He became delusional, however, and believed that an organization followed him constantly.[5] Jorgensen moved back with his parents and dropped out of college.[6] He later returned to UC Berkeley, but continued to live with his parents.[7] Jorgensen obtained a bachelor's degree in economics and achieved a grade point average of 3.245.[8]

After graduating from UC Berkeley, Jorgensen enrolled at the University of Texas at Austin in the masters of business administration ("MBA") program.[9] He received an MBA degree in 1993, with a grade point average of 3.1764.[10] After his graduation from the University of Texas, Jorgensen then enrolled at the Illinois Institute of Technology, Chicago-Kent Law School.[11] Jorgensen attended classes at the law school for one day, but dropped out after he came to believe

---

[2] AR at 116.

[3] AR at 280-86.

[4] AR at 53.

[5] AR at 59.

[6] AR at 53.

[7] AR at 58.

[8] AR at 285.

[9] AR at 49.

[10] AR at 287-88.

[11] AR at 57.

2

Case No.: C 11-0331 PSG
ORDER

that the same "God, Inc." organization that had followed him at UC Berkeley was now in Chicago.[12]

On October 29, 1993, while attending the University of Texas, Jorgensen was hospitalized for approximately one week.[13] The University of Texas requested that Jorgensen's parents remain with him until his condition improved.[14] Jorgensen's father stayed with him until he graduated at the end of the academic year.[15] Subsequently, Jorgensen returned to live with his parents.[16] He was first treated for delusional issues in 1993.[17]

Since 1993, Jorgensen has been hospitalized repeatedly.[18] Between 1995 and 2007, Jorgensen was treated by a psychiatrist, Alan Maloney, M.D.[19] On February 19, 2008, Dr. Maloney opined that Jorgensen had a "schizoaffective disorder beginning in the early 1990[s]."[20] On March 13, 2008, Dr. Maloney opined that Plaintiff's first suffered the effects of the disorder "in the last year of high school in 1985 at the age of 18 and [that] his first break was at the age 19 while a freshman at the University of California, Berkeley."[21] Dr. Maloney based his opinion on two observations. First, schizophreniform disorders are typically not clinically diagnosed until long after the first episode of the disease, and Jorgensen showed symptoms of the disorder – social

---

[12] *Id.*

[13] AR at 299.

[14] *Id.*

[15] AR at 54.

[16] AR at 55.

[17] AR at 53.

[18] AR at 61, 632.

[19] AR at 61, 530.

[20] AR at 526.

[21] AR at 586.

3

Case No.: C 11-0331 PSG
ORDER

dysfunction, social isolation, and depression – when he moved back with his parents and dropped out of college.[22] Second, Dr. Maloney reviewed Plaintiff's transcripts and found a statistically significant disturbance at age 18, which he attributes to the onset of the schizoaffective disorder.[23]

On August 27, 2007, Jorgensen applied for childhood disability insurance benefits ("DIB").[24] Jorgensen alleges that he became disabled on September 1, 1981 (when he was thirteen years old) as a result of mental impairments, including paranoia anxiety schizoaffective depression.[25] On April 18, 2008, his application was denied upon reconsideration.[26] On June 9, 2009, the ALJ held an administrative hearing.[27] Jorgensen, who was represented by an attorney, testified at the hearing.[28] On July 8, 2009, the ALJ found that Jorgensen had no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment prior to reaching 22 years of age.[29] Jorgensen therefore was not disabled as defined by Section 223(d) of the Social Security Act and not eligible to receive childhood insurance benefits.[30] On December 22, 2010, the Appeals Council denied review and the Commissioner's decision became final.[31]

The ALJ set forth several grounds for reaching his conclusion: (1) although Jorgensen withdrew from UC Berkeley and did not re-enroll until one year later, he did not seek mental health

---

[22] *Id.*

[23] AR at 586-87.

[24] AR at 13.

[25] AR at 15.

[26] AR at 13.

[27] AR at 13.

[28] *Id.*

[29] AR at 16.

[30] AR at 17.

[31] AR at 1.

4

Case No.: C 11-0331 PSG
ORDER

counseling at that time or at any other time until 1993, four years after he turned 22 years old; (2) the record does not contain any objective medical signs and laboratory findings to substantiate the existence of any mental disorder or any medically determinable impairment during the relevant time period; (3) while Dr. Maloney opines that Jorgensen has schizoaffective disorder and the onset of the disease was at 18 years old, he does not have any treatment records from the relevant time period and did not begin treatment until 1993, four years after the relevant time period; and (4) Dr. Maloney could not explain how Jorgensen functioned well enough during the relevant time period to earn a college degree and then enroll in a graduate program at another academically challenging university.[32] The ALJ therefore concluded that Dr. Maloney's opinion was not supported by the record and afforded it little weight.[33]

Jorgensen requests that the court reverse the ALJ's final decision and remand the case to the Social Security Administration for an award of benefits. Alternatively, Jorgensen requests that this case be remanded for further administrative proceedings to determine whether he is disabled. The Commissioner in turn asks that the ALJ's final decision be affirmed.

## II. LEGAL STANDARDS

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Jorgensen benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[34] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a

---

[32] AR at 17.

[33] *Id.*

[34] *See Moncada v. Chater,* 6- F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

5
Case No.: C 11-0331 PSG
ORDER

reasonable mind might accept as adequate to support the conclusion.[35] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[36] Where evidence exists to supports more than one rational interpretation, the court must defer to the decision of the ALJ.[37]

### B. Eligibility for Childhood Disability Insurance Benefits

A person is "disabled" for purposes of receiving disability insurance benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months.[38]

To qualify for childhood disability benefits after turning 18 years old, a claimant must establish that he had a disability that began before he or she became 22 years old.[39] A physical or mental impairment, a necessary condition of a disability, results from an anatomical, physiological, or psychological abnormality that is demonstrable by medically acceptable clinical and laboratory techniques.[40] An impairment requires medical evidence consisting of signs, symptoms and laboratory findings, beyond a claimant's statement of symptoms alone.[41] "Signs" are abnormalities that can be observed using medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate psychological abnormalities.[42] "Laboratory

---

[35] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[36] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501(9th Cir. 1989).

[37] *Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[38] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[39] *See* 20 C.F.R. § 404.350(a)(5).

[40] *See* 42 U.S.C. § 423(d)(3).

[41] *See* 20 C.F.R. § 404.1508.

[42] *See* 20 C.F.R. § 404.1528(b).

findings" are phenomena using medically acceptable laboratory diagnostic techniques, including psychological tests.[43]

### C. Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[44] If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[45] If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[46] If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[47] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[48] The plaintiff has the burden of proving that he or she is unable to perform past relevant

---

[43] *See* 20 C.F.R. § 404.1528(c).

[44] *See id.*

[45] *See id.*

[46] *See id.*

[47] A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[48] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

7
Case No.: C 11-0331 PSG
ORDER

work.[49] If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[50] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III. DISCUSSION

Jorgensen contends that the ALJ improperly concluded that he was unable to establish the onset of disability prior to his twenty-second birthday. The ALJ was not justified in discounting, or affording little weight to, the opinion of Dr. Maloney, who opined that the onset of Jorgensen's schizoaffective disorder occurred when he was 18 years old. The ALJ further erred by relying on the absence of any treatment records for the relevant time period and the fact that Dr. Maloney did not begin treating Jorgensen until 1993, four years after he turned 22 years old. Because Dr. Maloney was his treating physician when he rendered his opinion, Jorgensen argues that Dr. Maloney's opinion should have been given substantial deference.

The Commissioner responds that Jorgensen had to establish an impairment before he reached 22 years of age or by October 23, 1989 by medically demonstrable phenomena using acceptable laboratory diagnostic techniques. He did not do so. Jorgensen has no medical records whatsoever for the time period between 1981 and 1989.[51] Indeed, the administrative record reflects that a psychiatrist did not even begin treating Jorgensen until 1995, almost six years after the relevant time period.[52] The Commissioner also points out that Dr. Maloney's March 2008 opinion

---

[49] *See id.*

[50] As discussed further below, there are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

[51] *See* SSR 83–20, 1983 WL 31249 ("[m]edical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability").

[52] AR at 530.

8

Case No.: C 11-0331 PSG
ORDER

that Jorgensen's disorder began in 1985[53] was contradicted by his own prior opinion provided one month earlier. In February 2008, Dr. Maloney opined that Jorgensen had a "schizoaffective disorder beginning in the early 1990[s]."[54] In light of the conflicting opinions, the ALJ was right to afford little weight to Dr. Maloney's second opinion.[55] In addition, another psychiatrist, Dr. Hurwitz, who reviewed Jorgensen's medical records, concluded that there was insufficient evidence to determine Jorgensen's medical condition between 1985 and 1989.[56]

The court finds that substantial evidence supports the ALJ's decision. Even ignoring the absence of any treatment records from the relevant period, Dr. Hurwitz's opinion and Jorgensen's failure to seek treatment between 1985 to 1989 collectively provide the more than scintilla quantum of evidence that requires deference to the agency. The only significant, contradictory evidence cited by Jorgensen is the March 2008 opinion of Dr. Maloney. But a treating physician's opinion may be discounted where, as here, it controverted by the opinion of another physician, and the ALJ provides "specific and legitimate" reasons for doing so.[57] The ALJ met that burden when he noted that, among other things: (1) Maloney only started treating Jorgensen years after the alleged onset of Jorgensen's disability; and (2) Maloney could not explain how Jorgensen managed

---

[53] AR at 586-87.

[54] AR at 526.

[55] AR at 16-17.

[56] *Cf.*, *Vella v. Astrue*, 634 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (denying benefits where the plaintiff failed to provide any objective medical evidence regarding his mental health prior to the age of twenty-two, and the earliest medical records dated to when the plaintiff was twenty-three); *Turner v. Apfel*, 11 F. App'x 439, 440 (6th Cir. 2001) (denying benefits where the plaintiff failed to produce any evidence within the relevant period); *Ricci v. Apfel*, 159 F. Supp. 2d 12, 17 (E.D. Pa. 2001) (denying benefits where the plaintiff failed to produce medical records during the relevant period, and only began seeing a psychiatrist after turning twenty-two).

[57] *See Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

9

Case No.: C 11-0331 PSG
ORDER

to attend two challenging universities during the period at issue and earned a college degree.[58]

This is especially true considering that Maloney contradicted himself just a month earlier.

### IV. CONCLUSION

Jorgensen's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:    3/31/2012

_Paul S. Grewal_
PAUL S. GREWAL
United States Magistrate Judge

---

[58] *Cf. Batson v Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a treating physician's opinion may be discounted in light of the "nature and extent" of the physician's relationships with the claimant); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discounting physician opinion in light of claimant's ability to obtain college degree, complete certified nurse aid program, and participate in military training).